FILED

2020 Jan-17  PM 04:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERESA HAND,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.:** |
| | ) | _____ |
| **PEACH STATE TRUCK CENTERS,** | ) | |
| **LLC, d/b/a BIRMINGHAM** | ) | |
| **FREIGHTLINER LLC,** | ) | |
| | ) | **PLAINTIFF DEMANDS TRIAL** |
| **Defendant.** | ) | **BY STRUCK JURY** |

---

## COMPLAINT

---

## INTRODUCTION

Plaintiff Teresa Hand ("Hand") brings this action for legal and equitable relief to address unlawful employment practices and violations of Federal and State law by Defendant Peach State Truck Centers, LLC d/b/a Birmingham Freightliner, LLC.

## JURISDICTION

1.     This complaint seeks legal and equitable relief to redress Defendant's violations of Plaintiff Hand's rights secured by the following:

    a.     Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.;

    b.    Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. §§ 621–634;

    c.    Alabama Age Discrimination in Employment Act ("AADEA"), Ala. Code 1975, § 25-1-20;

    d.    Equal Pay Act 29 U.S.C. § 206(d)

    e.    the laws of the State of Alabama.

2.    Federal subject matter jurisdiction exists pursuant to:

    a.    28 U.S.C. §§ 1331, 1343(a)(3) and 1367;

    b.    The ADEA, 29 U.S.C. § 626(c)(l);

    c.    Title VII, 42 U.S.C. § 2000e-5(f)(3); and

    d.    29 U.S.C. § 216(b).

3.    Plaintiff's claims arising under the laws of the State of Alabama are properly before this Court pursuant to 28 U.S.C. § 1367, supplemental jurisdiction.

## PARTIES

4.    Plaintiff, Teresa Hand ("Hand"), is a female over the age of forty. Hand is a resident of Columbiana, Alabama in Shelby County, and was employed by Birmingham Freightliner in Birmingham, Alabama in Jefferson County Alabama.

5.    Defendant, Peach State Truck Centers, LLC d/b/a Birmingham Freightliner, LLC, ("Birmingham Freightliner") is a truck dealership that performs maintenance and collision repair services. Birmingham Freightliner, LLC is a

domestic Limited Liability Company. At all times relevant to this Complaint, Birmingham Freightliner was, and is, doing business in Jefferson County Alabama, within the Northern District of Alabama. Defendant Birmingham Freightliner employs at least fifteen (15) persons within the meaning of Title VII, 42 U.S.C. § 2000e(b) and at least twenty (20) persons within the meaning of the ADEA, 29 U.S.C. § 630(b). Defendant Birmingham Freightliner is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. 203(s)(l).

## VENUE

6.     Venue lies within the Northern District of Alabama. 28 U.S.C. § 1391.

## NATURE OF ACTION

7.     Hand alleges that Defendant Birmingham Freightliner engaged in intentional, unlawful employment practices and other acts of intentional discrimination, harassment, retaliation, and negligent and wanton hiring, training, supervision and retention. This action seeks to redress these grievances resulting from the actions of the Defendant, its agents, servants, and employees committed with respect to Hand's employment and otherwise; and for a permanent injunction restraining Defendant from discriminating against Hand and others similarly situated on account of age, race, gender, and retaliation.

8.     Hand also seeks whole relief including back pay, front pay,

compensatory and punitive damages, and all other legal or equitable relief, as appropriate. Additionally, Hand seeks attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

9.      On April 12, 2019, within 180 days of learning of the acts of discrimination of which she complains, Hand filed a Charge of Discrimination with the Equal Employment Opportunity Commission, ("EEOC"), alleging age discrimination, sex discrimination, and retaliation.  **(Attached as Exhibit A).**

10.     On October 23, 2019, the EEOC issued Hand a Notice of Right to Sue. **(Attached as Exhibit B).**

11.     Hand has met all prerequisites for bringing this action.

## STATEMENT OF FACTS

12.      Hand is a 51-year-old Caucasian female.

13.     Hand was hired by Liberty Truck Sales in 2006 which was bought by Peach State Truck Center in 2012 and the name was changed to Birmingham Freightliner.

14.     Hand worked at Birmingham Freightliner for over thirteen (13) years. Hand was the only woman that worked in the body shop at Birmingham Freightliner.

15.     From 2006 until 2018, Hand performed exemplary work and was never given any disciplinary warnings, write-ups, or threats of termination. Hand was never demoted, suspended, or subjected to any forms disciplinary action.

16.     In February 2017, Birmingham Freightliner promoted J.D. Humphries, ("Humphries") a white male, to the position of Senior Service Manager which gave him managerial authority over the employees in the body shop.

17.     Humphries became Hand's direct supervisor in February 2017.

18.     In July 2017, Hand was called into Humphries' office, where she was given a new title and additional job duties. Hand was previously the Body Shop Administrator but was promoted to the Assistant Body Shop Manager.

19.     Bryan Leskosky, the Director of Service, was present for this meeting when Hand was promoted. Hand was concerned that Humphries was giving her this new position only to set her up for failure, creating grounds for her termination.

20.     Hand expressed her concerns to Leskosky, who promised Hand that she would always have a position at Birmingham Freightliner.

21.     Hand had previously been an hourly employee, but was offered a salary after receiving this new title.

22.     Although all male salaried employees did not have to record their hours each day, Humphries required Hand to record her daily hours.

23.     Hand complained to Humphries that she, a female, was the only salaried employee who was required to record her daily hours. Humphries told Hand, "It didn't matter" and that Hand had to "prove her hours."

24.     Hand was guaranteed a $1,000 commission for the six months

5

following her promotion.

25.     In September 2017, Humphries hired Tim Barnett, a Caucasian male, as a service writer. Humphries began training him for Hand's new position, Assistant Body Shop Manager.

26.     Barnett, a male, was given a higher salary than Hand, although he had less experience.

27.     Barnett was guaranteed a commission for one year, although Hand was only guaranteed a commission for six months.

28.     In February 2018, Humphries demoted Hand from Assistant Body Shop Manager and rescinded her previously guaranteed commission for no valid reason.

29.     Humphries demoted Hand and cut her pay and benefits.

30.     On the day Hand was demoted, Humphries summoned Hand to his office where he screamed at her and slapped the desk in between them in an attempt to intimidate her. Hand was fearful that she would be physically assaulted during this encounter. A few days later, Humphries told Hand not to tell anyone about what happened in his office "or else."

31.     Humphries set Hand up by giving her a new title, then stripping her of the new title a few months later, creating a paper trail of poor performance.

32.     None of the substantially younger, male employees were treated this way by Humphries.

33.    Humphries transferred a substantially younger, Caucasian male employee, Cody Sikes, from the Tuscaloosa location to replace Hand as the Assistant Body Shop Manger.

34.    Although Sikes had less experience than Hand, he was paid a higher salary.

35.    In March 2018, Hand complained to Garrett Williams, in the company's human resource department, about the degrading behavior.

36.    Williams took no serious or meaningful steps to investigate or stop the demeaning behavior Hand was facing.

37.    In April 2018, Hand was given a verbal warning, although her work performance did not warrant a warning of discipline.

38.    In May 2018, Hand complained to Joe Presley, the Parts District Manager, about the discriminatory and harassing behavior she was facing. Presley informed Bryan Leskosky, the Director of Service, about Hand's complaint. Presley told Hand that a member of management would speak to her about her complaints. No members of Birmingham Freightliner's management ever spoke to Hand about her complaints of discrimination.

39.    In July 2018, Hand was issued a written disciplinary warning, which she refused to sign because the allegations were untrue.

40.    Hand was told management would follow up on this disciplinary

warning on August 17, 2018, however no follow up ever occurred.

41.     On October 1, 2018, Hand was issued a second disciplinary warning by Humphries for allegedly being unorganized.

42.     Hand was again told that management would conduct a follow up meeting on October 29, 2018; however, it never occurred.

43.     On October 29, 2018, Hand took both warnings she had been issued to the general manager, Chris Bisanz, and explained that the warnings were the result of gender and age discrimination.

44.     Bisanz agreed with Hand that the written warnings were void of substance; however, no concrete action was taken to remedy the unfair treatment.

45.     In November 2018, Daniel Stone, a male, was hired as the Continuous Improvement Coordinator.

46.     Although Mr. Stone had no previous experience with Birmingham Freightliner, he was paid a higher salary than Hand.

47.     On December 14, 2018, Hand was terminated by Humphries who claimed, "it wasn't working out" and the company was going a different route.

48.     Hand was offered a $2,400 severance package, which she refused.

49.     After Hand was terminated, she was replaced by a male, Lynn Dutton.

50.     Although Dutton had less experience than Hand, Dutton was paid more than Hand.

## COUNT ONE
## TITLE VII SEX DISCRIMINATION, HARASSMENT, AND RETALIATION

51.     Hand realleges paragraphs 1–2, 4–6, 9–11, and 12–50, as if fully set out herein.

52.     Hand is a female and a member of a protected class.

53.     Defendant Birmingham Freightliner targeted Hand based on her sex and subjected her to adverse treatment.

54.     Hand's sex was a motivating factor in Defendant's decision to subject Hand to adverse employment actions including unwarranted write-ups and warnings, differing terms of employment, discipline, pay raises, and equal pay to that of her male coworkers. *Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

55.     Hand suffered less preferential terms, conditions, and pay of employment than similarly-situated male employees.

56.     Hand was the only salaried employee who was required to record her daily hours. Humphries trusted male employees, but required Hand to "prove her hours."

57.     Hand was given a new title, then stripped of her new job, creating a paper trail of poor work performance. No male employees were subjected to this demeaning and harassing treatment.

9

58.     Barnett, Sikes, Stone, and Dutton were male employees with less experience than Hand. Barnett, Sikes, Stone, and Dutton were given higher rates of pay than Hand and additional benefits and commissions that Hand was not given.

59.     Unlike Hand, no male employees were called into offices where they were forced to endure displays of aggression and intimidation.

60.     Unlike Hand, no male employees were issued unwarranted write-ups and warning because of their gender.

61.     Hand was subjected to a hostile work environment on the basis of her gender, female.

62.     Hand complained multiple times about gender discrimination.

63.     Hand's complaints were never investigated or remedied.

64.     Hand suffered retaliation after she complained of gender discrimination. Hand was only written up and terminated after her numerous complaints of gender discrimination.

65.     Such unlawful employment practices proximately caused Hand to suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame, trauma, financial loss, and loss of employment opportunity for which she claims damages.

66.     Hand seeks declaratory and injunctive relief, award of lost wages, back pay, front pay, interest, compensatory and punitive damages for loss of career

opportunity, humiliation, embarrassment, and mental anguish, costs, attorneys' fees and any and all such other relief the trier of fact may assess.

## COUNT TWO
## ADEA AND AADEA AGE DISCRIMINATION, HARASSMENT, AND RETALIATION

67.     Hand realleges paragraphs 1–2, 4–6, 9–11, and 12–50, as if fully set out herein.   This count seeks to redress the unlawful employment practices of age discrimination and harassment by Defendant, its agents, employees and ratified by Defendant, as protected by the ADEA and AADEA prohibiting age discrimination in the workplace.

68.     Hand is fifty-one (51) years of age.

69.     Hand is qualified to perform the job duties of Assistant Body Shop Manager. Hand successfully performed her job duties and suffered no disciplinary action for over thirteen (13) years.

70.     Hand suffered intentional, discriminatory treatment based on her age.

71.     Hand was subjected to different terms and conditions of employment than her substantially younger coworkers.

72.     Hand was the only salaried employee who was required to record her daily hours. Humphries trusted substantially younger employees, but required Hand to "prove her hours."

73.     Hand was given a new title, then stripped of her new job, creating a

paper trail of poor work performance. No substantially younger employees were subjected to this demeaning and harassing treatment.

74.    Sikes was a substantially younger employee with less experience than Hand. Sikes was given a higher rate of pay than Hand and additional benefits and commissions that Hand was not given.

75.    Unlike Hand, no substantially younger employees were called into offices where they were forced to endure displays of aggression and intimidation.

76.    Unlike Hand, no substantially younger employees were issued unwarranted write-ups and warning because of their age.

77.    Birmingham Freightliner treated substantially younger employees with less experience and seniority more favorably than Hand.

78.    Hand complained multiple times about age discrimination.

79.    Hand's complaints were never investigated or remedied.

80.    Hand suffered retaliation after she complained of age discrimination. Hand was only written up and terminated after her numerous complaints of age discrimination.

81.    Hand's work environment, pay, and conditions of employment were materially altered and changed to her detriment after she complained of age discrimination and harassment.

82.    Such unlawful employment practices proximately caused Hand to

suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame, trauma, financial loss, and loss of employment opportunity for which she claims damages.

83.     Hand seeks declaratory and injunctive relief, award of lost wages, back pay, front pay, interest, liquidated damages, compensatory and punitive damages for loss of career opportunity, humiliation, embarrassment, and mental anguish, costs, attorneys' fees and any and all such other relief the trier of fact may assess.

**COUNT THREE**
**EQUAL PAY ACT AND CLARK-FIGURES EQUAL PAY ACT**

84.     Hand realleges paragraphs 1–2, 4–6, 9–11, and 12–50, as if fully set out herein.  This is a claim alleging violations of the Equal Pay Act, 29 U.S.C. § 206(d) and the Clarke-Figures Equal Pay Act (CFEPA), ALA. CODE 1975 § 25-1-30. The Equal Pay Act and the CFEPA prohibit an employer from discriminating between employees on the basis of sex by paying wages to employees in an establishment at a rate less than the rate at which the employer pays wages to employees of the opposite sex in such establishment for equal work on jobs, the performance of which requires equal skill, effort, education, experience, and responsibility, and which are performed under similar working conditions.

85.     Hand alleges that Defendant Birmingham Freightliner paid male employees at a higher rate of pay than Hand for equal work on jobs the performance of which requires equal skill, effort and responsibility, and which are performed

under similar working conditions.

86.     Barnett, Sikes, Stone, and Dutton were male employees with less experience than Hand. Barnett, Sikes, Stone, and Dutton were given higher rates of pay than Hand and additional benefits and commissions that Hand was not given.

87.     Hand further alleges that the differences in the rates of pay between the male employees and herself were not made pursuant to a seniority system, a merit system, a system which measures earnings by quantity or quality of production, or a differential based on any other factor other than sex.

88.     Hand seeks declaratory and injunctive relief, including unpaid minimum wages as defined in 29 U.S.C. § 216(b), an additional equal amount in liquidated damages, and attorney's fees and costs.

## COUNT FOUR
## INVASION OF PRIVACY

89.     Hand realleges paragraphs 3, 14–50, as if fully set out herein. This is a claim for invasion into Hand's privacy based on the laws of the State of Alabama. Defendant invaded Hand's privacy by ratifying the intentional acts of Humphries and other Birmingham Freightliner employees.

90.     Defendant invaded Hand's personal and emotional sanctum by ratifying Humphries' decisions to harass Hand and discriminate and retaliate against her.

91.     Defendant had actual notice of the actions complained of by Hand.

14

92.    Defendant knew of the discriminatory work conditions, rates of pay, and harassing and retaliatory write-ups and warnings Hand was subjected to by her supervisor, Humphries.

93.    Hand complained to at least four members of Birmingham Freightliner's management over a period of several months about the age and gender discrimination and harassment she was facing.

94.    Defendant having such knowledge, ratified Humphries' conduct by failing to investigate, remedy, or otherwise respond to Hand's complaints of discrimination and retaliation.

95.    Defendant, through Humphries, placed Hand in a false light with her peers, her employees, and her business contacts by informing them that she was discharged for misconduct.

96.    Defendant's false portrayal of Hand's employment and the circumstances surrounding her termination damaged her relationships and her ability to seek comparable employment and employment in her career choice.

97.    Defendant's conduct proximately caused Hand to suffer embarrassment, humiliation, shame, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which she claims damages.

98.    Hand seeks declaratory and injunctive relief, award of compensatory

and punitive damages, mental anguish, costs, interest, attorneys' fees, and any other such relief as the trier of fact may assess.

**COUNT FIVE**
**NEGLINGENT AND WANTON HIRING, TRAINING,**
**SUPERVISION, AND RETENTION**

99.    Hand realleges 3, 14–50, as if fully recited herein. This is a claim arising under the laws of the State of Alabama to redress the negligent and wanton hiring, training, supervision and retention of Defendant's employees.

100.    Defendant had a duty to provide a reasonably safe, non-hostile and non-discriminatory work environment to Hand and other employees in protected categories of gender and age.

101.    Defendant had actual notice of the actions complained of by Hand.

102.    Defendant knew of the discriminatory work conditions, rates of pay, and harassing and retaliatory write-ups and warnings Hand was subjected to by her supervisor, Humphries.

103.    Hand complained to at least four members of Birmingham Freightliner's management over a period of several months about the age and gender discrimination and harassment she was facing.

104.    Defendant having such knowledge, negligently and wantonly failed to train and discipline those employees who actively discriminated, harassed, retaliated and conspired against Hand, namely Humphries, on an ongoing basis, and failed to

protect Hand from further injury.

105.   Defendant failed to administer, communicate, or train Humphries and other managers and employees on polices against discrimination and harassment or otherwise eradicate behavior that created a hostile work environment.

106.   Hand's working conditions created by Humphries and Birmingham Freightliner were adverse and hostile and intended to cause Hand financial and emotional harm.

107.   As a proximate result of Defendant's unlawful conduct, Hand suffered adverse terms and conditions of employment, financial loss, humiliation, mental anguish, trauma and embarrassment, loss of reputation, and loss of career opportunity.

108.   Hand seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Plaintiff respectfully requests this Court:

A.   Grant a permanent injunction enjoining Defendants, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment on the basis of gender or age and

retaliation based on protected activity;

B.      Order Defendant to institute and carry out policies, practices and programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing policies against gender and age discrimination in the work place and against retaliation for engaging in protected activities;

C.      Order Defendant to make Hand whole by providing front pay, back pay, with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, Humphries' termination, compensatory damages, punitive and liquidated damages;

D.      Award the Plaintiff compensatory, punitive and liquidated damages;

E.      Award the Plaintiff her costs and expenses herein, including reasonable attorney fees; and,

F.      Award such other and further relief which this Court deems necessary and proper.

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Respectfully submitted,

*/s/ Alicia K. Haynes*
Alicia K. Haynes
Attorney for Plaintiff

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, AL 35226
Phone: (205) 879-0377
Email: akhaynes@haynes-haynes.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL:**

Peach State Truck Center, LLC d/b/a Birmingham Freightliner, LLC
c/o Richard Reynolds
401 Daniel Payne Drive
Birmingham, AL 35205

**PLAINTIFF'S ADDRESS:**

Ms. Teresa Hand
c/o Alicia Haynes
Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, AL 35226